# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OMAR SHARIF LITTLE, | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : No. 07-5361 |
| CITY OF PHILADELPHIA, et al., | : |
| Defendants. | : |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                         **JUNE 11, 2010**

       Presently before the Court is an unopposed Motion for Summary Judgment filed by Defendants Detective Levi Morton ("Morton"), Detective Michael Gross ("Gross") and the City of Philadelphia (the "City") (collectively, "Defendants"). For the reasons set forth below, Defendants' Motion will be granted.

## I.    FACTS[1]

       On October 8, 2004, at approximately 10:34 p.m., Philadelphia Police responded to a report of gunshots at 200 West Duncannon Street, Philadelphia, Pennsylvania. Upon arrival, the responding police officers observed the victim, Artise Nelson ("Nelson"), suffering from multiple gunshot wounds to the head and chest. Nelson was pronounced dead by paramedics at the scene. A witness known as "A. Sopha" told police officers at the scene that he heard gun shots and saw two black males who ran from the scene, entered a blue van and fled the area.

---

[1] The facts stated herein have been submitted to this Court by Defendants, are supported by Exhibits attached to Defendants' Motion for Summary Judgment and have not been disputed by Plaintiff Omar Sharif Little ("Omar Little"). Further, in setting forth these facts, Defendants state: "For purposes of this motion only, the facts most favorable to Plaintiff are assumed." (Defs.' Mot. for Summ. J. at unnumbered page 2 n.1.)

Morton, a detective with the Homicide Unit for the Philadelphia Police Department, was assigned to investigate the murder of Nelson.

On November 22 and 23, 2004, Morton took a signed written statement from Steven Hayes ("Hayes"). Hayes told Morton that he was a friend of Nelson and that he was with Nelson on the evening of October 8, 2004 when he was shot and killed. Hayes further stated that he and another male, Hakeem Lofton ("Lofton"), were standing with Nelson at the corner of 2nd and Duncannon Streets when two black males approached them and shot Nelson. During his interview with Morton, Hayes was shown a photo array of eight possible suspects and Hayes positively identified Omar Little as one of the individuals that committed the murder. Morton documented Hayes's photo identification of Omar Little by having Hayes sign his name above the photo of Omar Little on the photo array.

On December 14, 2004, Morton received information from Philadelphia Police Officer Ken Lay ("Lay") of the Philadelphia Police Department's Firearm Unit that a positive match was made with the ballistic evidence recovered from the murder scene with a weapon that was recovered from an unrelated incident. The unrelated incident involved a shooting that occurred on October 14, 2004 at 33rd and Huntingdon Streets in Philadelphia. It was determined that the weapon that was used during the shooting at 33rd and Huntingdon Streets, a Smith & Wesson 40 caliber firearm, was the same weapon used in the shooting of Nelson, based upon the fact that the ballistics from this firearm matched the ballistic evidence recovered at the murder scene of Nelson. One of the individuals arrested for the shooting at 33rd and Huntingdon Streets was an individual named Kyle Little. Kyle Little was found to be in possession of the 40 caliber handgun which was used in the murder of Nelson. Morton's investigation revealed that Kyle

Little is the brother of Omar Little, and that they resided at the same address located at 2451 West Harold Street in Philadelphia. In addition to the 40 caliber firearm found in the possession of Kyle Little, Philadelphia Police also confiscated at 33rd and Huntingdon Streets a 1995 blue Chevrolet minivan that had been used by Kyle Little and the other individuals who were arrested at the scene. This blue minivan matched the description of the vehicle which A. Sopha reportedly saw fleeing the murder scene at 2nd and Duncannon Streets on October 8, 2004.

On December 15, 2004, Detective Morton took a signed written statement from Lofton, the individual whose name was provided to Morton by Hayes. Lofton told Morton that he was with Nelson at 2nd and Duncannon Streets at the time of Nelson's murder. Lofton stated that while he was engaged in conversation with Nelson, a black male known to him as "Omar" approached them, pulled out a chrome-colored, semi-automatic handgun and shot Nelson. Lofton stated that he had known "Omar" for several months and that he knew him from being housed with him in a cell at the Philadelphia House of Corrections. During his interview with Morton, Lofton was shown a photo array of eight possible suspects and Lofton positively identified Omar Little as one of the individuals that committed the murder of Nelson. Morton documented Lofton's photo identification of Omar Little by having Lofton sign his name above the photo of Omar Little on the photo array.

On December 16, 2004, Lieutenant Rielhl of the Philadelphia Police Department's Homicide Unit conferred with A.D.A. Edward McCann ("McCann") of the Philadelphia District Attorney's Office. McCann, who was the Chief of the District Attorney's Homicide Unit, approved the charge of murder against Omar Little. On December 16, 2004, Morton swore out an affidavit of probable cause for the arrest of Omar Little on the charge of murder and other

related charges. The arrest report was based upon the information that Morton had received from Hayes and Lofton, as well as the ballistics information received from Lay. Morton's affidavit of probable cause was approved on December 16, 2004 by Bail Commissioner Stack. On the basis of Morton's approved affidavit of probable cause, a warrant authorizing the arrest of Omar Little was issued on December 16, 2004.

On December 16, 2004, Morton, along with other members of the Philadelphia Police Department's Homicide Unit, went to Omar Little's home located at 2451 Harold Street in an attempt to execute the arrest warrant. During the immediate time period subsequent to the issuance of the arrest warrant on December 16, 2004, the Philadelphia Police Department had information indicating that Omar Little was actively fleeing police apprehension and that he was considered a fugitive. Therefore, the task of arresting Omar Little was assigned to the Philadelphia Police Department's Fugitive Squad, which is a part of the Department's Homicide Unit.

In December of 2004, Gross was a detective with the Philadelphia Police Department's Homicide Unit and was assigned to the Unit's Fugitive Squad. Gross was one of the detectives assigned to apprehend Omar Little based upon the arrest warrant that was issued on December 16, 2004. Upon the authority of the arrest warrant, on January 19, 2005, Gross, along with other members of the Fugitive Squad and law enforcement officials from the FBI, arrested Omar Little inside a residence at 2338 North Woodstock Street in Philadelphia. Omar Little was then charged with the murder of Nelson.

Omar Little remained in custody until December 21, 2005, when he was released on bail from the Philadelphia Prison System. On February 13, 2006, the Philadelphia District Attorney's

Office dropped all charges against Omar Little related to the murder of Nelson.

On December 20, 2007, Omar Little initiated this § 1983 civil rights action. On August 1, 2008, Omar Little filed an Amended Complaint. On August 26, 2008, Defendants filed a Motion to Dismiss as to several of Omar Little's claims. On January 26, 2009, the Honorable Bruce W. Kauffman entered an Order granting Defendants' Motion to Dismiss on Counts I, II, III and V of the Amended Complaint. The only claims that remain are: (1) a claim for malicious prosecution under 42 U.S.C. § 1983, and (2) a § 1983 claim against the City pursuant to <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) ("<u>Monell</u> claim"). On March 8, 2010, Defendants filed their Motion for Summary Judgment regarding these two remaining claims.

In their Motion, Defendants contend that they have produced to Omar Little: (1) "the homicide binder maintained by the Philadelphia Police Department's Homicide Unit" which contains the relevant investigation file concerning the investigation of Nelson's murder;[2] (2) "the documents maintained by the Philadelphia District Attorney's Office concerning their prosecution of Omar Little for the murder of Artise Nelson"; and (3) "the identity of Assistant District Attorney Jason Bologna, who was the attorney assigned to the prosecution of Omar Little." (Defs.' Mot. for Summ. J. at unnumbered page 7.) Defendants further claim that they responded to Omar Little's written interrogatories and documents requests. However, Defendants assert that Omar Little has not produced any discovery in this matter, has never

---

[2] Defendants claim that the City "originally attempted to have these documents hand delivered to Plaintiff's attorney Berto Elmore. However, the delivery person was unable to locate a person at the delivery address, and the documents were returned." (Defs.' Mot. for Summ. J. at unnumbered page 7 n.2.) Defendants further assert that on January 13, 2010, the City "subsequently mailed the documents to attorney Berto Elmore, at the address listed for him on the Court's civil docket page." (<u>Id.</u>) However, several weeks after these documents were mailed, the box containing the documents was marked as "unclaimed" and returned to the undersigned attorney by the United States Post Office. (<u>Id.</u>)

5

responded to Defendants' written discovery requests and has not taken any depositions in this matter. Omar Little has also not responded to the instant Motion.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the Court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law. Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather, that party must go beyond the pleadings and present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325). Further, the non-moving party has the burden of producing evidence to establish prima facie each element of its claim. Celotex, 477 U.S. at 322-23. If the Court, in viewing all reasonable inferences in favor of the non-moving party,

determines that there is no genuine issue of material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987). Moreover, "[i]f the opposing party does not . . . respond [to the summary judgment motion], summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

## III. DISCUSSION

### A. Malicious Prosecution Claim

To state a claim for malicious prosecution, Omar Little must establish: (1) that the defendant initiated criminal proceedings against him; (2) that the proceedings were initiated without probable cause; (3) that the proceedings were initiated with malice; and (4) that the proceedings terminated in favor of the plaintiff. Tomaskevitch v. Specialty Records Corp., 717 A.2d 30, 33 (Pa. Commw. Ct. 1998).

The Third Circuit has noted that the lack of probable cause is "a sine qua non of malicious prosecution." Trabal v. Wells Fargo, 269 F.3d 243, 249 (3d Cir. 2001). While probable cause requires more than "mere suspicion" that a person has committed a crime, it does not require that the officer have sufficient evidence to prove guilt beyond a reasonable doubt. Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995); see also United States v. Terselich, 885 F.2d 1094, 1096 n.1 (3d Cir. 1989) ("[P]robable cause requires a lesser showing . . . than is required to sustain a judgment of conviction under the reasonable doubt standard[]. . . ."). In United States v. Yusuf, the Third Circuit stated that courts must look at the "totality of the circumstances" as set forth in the affidavit to determine whether probable cause exists. 461 F.3d 374, 390 (3d Cir. 2006). The court further explained that such a determination "requires courts to consider the cumulative weight of the information set forth by the investigating officer in

7

connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences." Id. (citing United States v. Arvizu, 534 U.S. 266, 275 (2002)).  Probable cause to arrest can be based upon statements from a witness.  Trabal, 269 F.3d at 250.  Furthermore, probable cause is measured on the basis of the collective knowledge of the investigating police officers, rather than on the knowledge of the arresting officer alone. United States v. Belle, 593 F.2d 487, 497 n.15 (3d Cir. 1979).

The undisputed record clearly demonstrates that there was probable cause to initiate charges against Omar Little.  As mentioned, on the evening of Nelson's murder, A. Sopha told police officers that he heard gun shots and saw two black males who ran from the scene, entered a blue van and fled the area.  In November of 2004, Hayes, who was with Nelson on the evening of the homicide, was shown a photo array of eight possible suspects and Hayes positively identified Omar Little as one of the individuals that committed the murder of Nelson.  Lofton, who was also with Nelson at the time of his murder, told Morton that while he was engaged in conversation with Nelson, a black male known to him as "Omar" approached them and shot Nelson.  Lofton stated that he had known "Omar" for several months and Lofton positively identified Omar Little on a photo array as one of the individuals that committed the murder. Morton's investigation also revealed that Omar Little resided with his brother, Kyle Little.  Based on the ballistic evidence obtained from Lay, it was determined that a firearm found in the possession of Kyle Little was the same weapon used in the murder.  Finally, a blue minivan used by Kyle Little matched the description of the vehicle which A. Sopha reportedly saw fleeing the scene of Nelson's murder.

Omar Little has not produced any evidence on record to establish that the proceedings in

this case were initiated without probable cause. The totality of the circumstances as set forth above clearly show otherwise and we find that there is no genuine issue of material fact as to whether probable cause was lacking. See Yusuf, 461 F.3d at 390. As a result, his malicious prosecution claim must fail as a matter of law.

**B.    Monell Claim**

In Monell, the Supreme Court held that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[,] . . . the government as an entity is responsible under § 1983." 436 U.S. at 694. As stated, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams, 891 F.2d at 460. In failing to go beyond the pleadings, Omar Little has not met his burden of showing that there is any genuine issue of material fact as to whether the City has any policy or custom which resulted in a deprivation of his civil rights. Furthermore, because we have already found that Omar Little's malicious prosecution claim must fail, his Monell claim also cannot survive summary judgment. See Grendysa v. Evesham Twp. Bd. of Educ., No. 02-1493, 2005 U.S. Dist. LEXIS 22748, at *42 (D.N.J. Sept. 27, 2005) (dismissing Monell claim "because the Court has already found that Plaintiff's malicious prosecution claim . . . cannot survive summary judgment"). Because no other viable claims remain in this case, we will dismiss Omar Little's Amended Complaint with prejudice.

An appropriate Order follows.